UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KIMBERLY M.,[1]

        Plaintiff,

   v.                                                            19-CV-1546-LJV
                                                                        DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____


On November 15, 2019, the plaintiff, Kimberly M. ("Kimberly"), brought this action

under the Social Security Act.  She seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  Docket

Item 1.  On May 29, 2020, Kimberly moved for judgment on the pleadings, Docket Item

11; on July 28, 2020, the Commissioner responded and cross-moved for judgment on

the pleadings, Docket Item 12; and on August 18, 2020, Kimberly replied, Docket Item

_____

[1] To protect the privacy interests of social security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18,
2020).

[2] Kimberly applied for both Social Security Income ("SSI") and Disability
Insurance Benefits ("DIB").  One category of persons eligible for DIB includes any adult
with a disability who, based on her quarters of qualifying work, meets the Social
Security Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *see also Arnone v.
Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person
with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified
individual may receive both DIB and SSI, and the Social Security Administration uses
the same five-step evaluation process to determine eligibility for both programs.  *See*
20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

13.  For the reasons stated below, this Court grants Kimberly's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id.*  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles."  *Johnson*, 817 F.2d at 986.

---

[3]  This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## DISCUSSION

Kimberly argues that the residual functional capacity ("RFC") found by the ALJ is not supported by substantial evidence because the ALJ gave "great weight" to the medical opinion of Hongbiao Liu, M.D., but then formulated an RFC that excluded—without explanation—two important limitations Dr. Liu identified. *See* Docket Item 11-1. She specifically argues that the RFC did not include a "reaching limitation" despite Dr. Liu's finding that Kimberly "could only occasionally reach with her left arm." *Id.* at 5, 10. Likewise, she argues that the "ALJ did not define a sit/stand opinion in the RFC, although Dr. Liu [gave] more specific information about [Kimberly's] ability to sit, stand, and walk at any one given time." *Id.* at 11. This Court agrees that the ALJ erred and, because that error was to Kimberly's prejudice, remands the matter to the Commissioner for proper consideration of Dr. Liu's opinion.

## I.   REACHING LIMITATION

"Under the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  An "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *id.* (quoting *Gecevic v. Sec'y of Heath & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).  But when "an ALJ . . . chooses to adopt only portions of a medical opinion[, she] must explain . . . her decision to reject the remaining portions." *Raymer v. Colvin*, 2015 WL

5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417, at *8).

Moreover, if the ALJ rejects an opinion or part of an opinion on a particular limitation,

the ALJ must base that decision on other medical evidence and may not replace the

medical opinion with the ALJ's lay judgment.  *See Balsamo v. Chater*, 142 F.3d 75, 81

(2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a

claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ

cannot arbitrarily substitute his own judgment for [a] competent medical opinion.  While

an ALJ is free to resolve issues of credibility as to lay testimony or to choose between

properly submitted medical opinions, he is not free to set his own expertise against that

of a physician who submitted an opinion to or testified before him." (citation and original

alterations omitted)).

    Here, Dr. Liu found that Kimberly had a "mild to moderate limitation for . . .

overhead reaching."  Docket Item 6 at 86.  More specifically, Dr. Liu's medical source

statement limited Kimberly to reaching (overhead or otherwise) occasionally with her left

arm and pushing and pulling frequently with both arms.[4]  *Id.* at 477.  The ALJ afforded

Dr. Liu's opinion "great weight," finding it "consistent with the record as a whole as it

relates to the diagnoses of physical impairments and the limitations that

flow[] from the various diagnoses including lifting, carrying, postural, manipulative and

environmental restrictions, which were also consistent with the medical evidence of

---

[4] Dr. Liu's assessment also concluded that Kimberly could reach continuously with her right arm and handle, finger, and feel continuously with both hands.  Docket Item 6 at 477.

record." *Id.* at 86-87.  But the RFC did not even mention Dr. Liu's reaching limitation.[5]
*See id.* at 83.

Of course, the ALJ was not required to accept every aspect of Dr. Liu's opinion.
*See Younes*, 2015 WL 1524417, at *8.  But she was required to explain what parts of
Dr. Liu's opinion she rejected and why.  After all, when a medical source opinion
conflicts with the RFC, "the [ALJ] must explain why th[at] opinion was not adopted."
SSR 96-8p, 1996 WL 374184, at *7.  And the ALJ also "must provide an 'accurate and
logical bridge' between the evidence and the conclusion that the claimant is not
disabled so that . . . 'a reviewing court . . . may assess the validity of the agency's
ultimate findings and afford [the] claimant meaningful judicial review.'"  *Craft v. Astrue*,
539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v.
Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).  That is especially so when the ALJ
explicitly gives great weight to the conflicting opinion.  *Raymer*, 2015 WL 5032669, at
*6.

---

[5] The ALJ found Kimberly has the RFC "to perform light work as defined in 20
C.F.R. 404.1567(b) and 416.967(b) except that she can stand or walk for four hours and
sit for six hours total in an eight-hour workday.  [Kimberly] can frequently push and pull.
She can occasionally climb ramps and stairs, but never climb ladders, ropes, or
scaffolds.  [Kimberly] can occasionally stoop (i.e., bend at the waist), but never kneel,
crouch (i.e.[,] bend at the knees), or crawl.  She cannot tolerate exposure to unprotected
heights, moving machinery, and moving mechanical parts.  [Kimberly] should avoid
exposure to pulmonary irritants including dust, fumes, gases, and vibrations.  She
should avoid working with bright lights or flickering lights, such as, would be
experienced in welding or cutting metals.  She could not perform a job requiring driving
motor vehicles.  [Kimberly] is able to perform simple routine tasks in a low stress
environment (i.e., no work at production rate pace, no fast-moving assembly line-type
work, and work with few, if any, changes in work routines, processes, or settings)."
Docket Item 6 at 83.

What is more, the ALJ did not identify any contrary medical evidence that might reconcile the discrepancies between the RFC and Dr. Liu's opinion. So if the ALJ rejected part of Dr. Liu's opinion—apparently the only opinion in the record on Kimberly's ability to reach and undoubtedly the only opinion afforded "great weight"— then the ALJ impermissibly "substitute[d her] own judgment for [a] competent medical opinion." *See Balsamo*, 142 F.3d at 81.

The ALJ's "failure to reconcile the RFC assessment with [Dr. Liu's] medical source statement[] was error, and based upon the testimony given by the vocational expert [("VE")], the failure was not harmless." *See Dioguardi*, 455 F. Supp. 2d at 298. Indeed, as Kimberly observes, all three jobs that the VE identified, Docket Item 6 at 121, and that the ALJ relied on to find that Kimberly was not disabled, *id.* at 89, require *frequent* reaching, *see* 237.367-018 Information Clerk, 1991 WL 672187 (Jan. 1, 2016) ("Reaching: Frequently"); 559.687-014 Ampoule Sealer, 1991 WL 683782 (Jan. 1, 2016) ("Reaching: Frequently"); 358.677-010 Checkroom Attendant, 1991 WL 672954 (Jan. 1, 2016) ("Reaching: Frequently"). So even though the definition of "light work"— which the ALJ found that Kimberly could perform—does not explicitly address reaching, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b), the VE's testimony made *frequent* reaching a necessary part of the jobs that the ALJ contemplated for her. That frequent reaching might well require reaching with both arms, something Dr. Liu opined that Kimberly could not do. And the failure to address that, either by incorporating Dr. Liu's limitation into the RFC or by explaining why it was rejected, therefore was error.

In sum, Dr. Liu's opinion limiting Kimberly to reaching only occasionally with her left arm, "if considered and adopted, may have resulted in a finding that [Kimberly] was

disabled." *See Raymer*, 2015 WL 5032669, at *6.  Kimberly "is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits."  *See Dioguardi*, 445 F. Supp. 2d at 297; *see also Raymer*, 2015 WL 5032669, at *6 ("Remand is especially appropriate where . . . the ALJ gave [the doctor's] opinion 'considerable weight,' but failed to provide an explanation for not incorporating into the RFC some of the limitations identified in that opinion—particularly those that would lead to a finding of disability.").  And she is entitled to have an RFC based on specific medical evidence in the record, not the ALJ's "own surmise."  *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order).

## II.   SIT/STAND OPTION

"When the record indicates that a [claimant] has significant limitations with regard to [her] ability to sit for extended periods of time, the ALJ should engage in a detailed discussion concerning [the claimant's] restrictions."  *Overbaugh v. Astrue*, 2010 WL 1171203, at *9 (N.D.N.Y. Mar. 22, 2010).  Under such circumstances, the RFC "must be specific as to the frequency of the individual's need to alternate sitting and standing."  SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *see also Overbaugh*, 2010 WL 1171203, at *9 ("Even though the treating physician set forth restrictions regarding [the claimant's] need to alternate between sitting and standing, SSR 96-9p and caselaw clearly dictate that the ALJ had a duty to specify the extent of the limitation.").  That is because a claimant's need to alternate between sitting and standing "may erode the occupational base"—for example, by making even sedentary or light work impossible to perform.  *See Overbaugh*, 2010 WL 1171203, at *9 (citing *Iannopollo v. Barnhart*, 280 F. Supp. 2d 41, 50 (W.D.N.Y. 2003)).

Here, Dr. Liu opined that Kimberly "had [a] mild to moderate limitation for prolonged walking," Docket Item 6 at 86; he limited Kimberly to sitting for one hour, standing for one hour, and walking for two hours without interruption, *id.* at 476.  Dr. Liu's opinion therefore necessarily contemplates alternating among sitting, standing, and walking throughout the day.  But despite affording Dr. Liu's opinion "great weight," *id.* at 87, the ALJ formulated an RFC lacking any detail about "the frequency of [Kimberly's] need to alternate sitting and standing," *see id.* at 83.  And that violated the Commissioner's own rules.  *See* SSR 96-9p, 1996 WL 374185, at *7.

The VE testified that the jobs the ALJ identified at step five—information clerk, ampoule sealer, and checkroom attendant—"can be performed with a sit/stand option in place," Docket Item 6 at 121, but that does not render the ALJ's error harmless.  Dr. Liu's limitations were quite specific—for example, limiting the numbers of hours Kimberly could walk, stand, or sit without interruption.  *See id.* at 476.  In contrast, the sit/stand option about which the VE testified did not specify the frequency with which Kimberly could alternate or whether she would have to spend a specific time in one option or the other.  *See id.* at 121.  Because the RFC included no discussion of Kimberly's need to alternate among sitting, standing, and walking whatsoever, and because the ALJ did not explain whether or why she rejected Dr. Liu's finding about the need to alternate, the Court cannot "determine whether the ALJ considered [the limitations] or overlooked them altogether."  *See Raymer*, 2015 WL 5032669, at *6.

In addition, the RFC concluded that Kimberly "can stand or walk for *four* hours and sit for *six* hours total in an eight-hour workday," *see id.* at 83 (emphasis added), and the VE's testimony relied on the premise that Kimberly could "sit for *four* [hours and]

stand and walk for *four* [hours]" in an eight-hour workday, *see id.* at 121 (emphasis added).  But Dr. Liu opined that Kimberly could sit and stand for only *three* hours each in an eight-hour workday.  *Id.* at 476.  So the RFC, and the sit/stand option about which the VE testified, did not account for the limitations that Dr. Liu found.  Although Kimberly did not raise that issue before this Court, the ALJ's failure to explain or even address this discrepancy is another reason to remand.  *See Dioguardi*, 445 F. Supp. 2d at 297; SSR 96-8p, 1996 WL 374184, at *7.

Indeed, the ALJ's decision seems to contradict itself on the sit/stand issue.  At first, the ALJ indicated that she may have rejected Dr. Liu's sit/stand limitation, as well as his finding that Kimberly needed to alternate between sitting and standing, *see* Docket Item 6 at 82 ("The evidence does not support a finding of any additional functional limitations other than those included in the residual functional capacity."); later, however, she suggested that she had, in fact, considered the need to alternate in determining that Kimberly was not disabled, *see id.* at 89 ("[T]the claimant's ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."); *see id.* at 121 (VE "prefac[ing her] response by telling [the ALJ] that the jobs [she will] provide can be performed with a sit/stand option in place").  This Court has no way of knowing whether the ALJ accepted Dr. Liu's limitations and used the VE's testimony in an attempt to satisfy them or rejected Dr. Liu's limitations.  And either way, this Court has no idea why.

The ALJ therefore either must explain why she did not credit Dr. Liu's opinion that Kimberly needed to limit, and alternate among, sitting, standing, and walking, or she must incorporate those limitations into the RFC, and she must be "specific as to the frequency of [Kimberly's] need to alternate sitting and standing."  *See* SSR 96-8p, 1996 WL 374184, at *7.  In addition, because Dr. Liu's medical source statement is the only medical opinion in the record addressing Kimberly's limitations in sitting, standing, and walking, if the ALJ rejects that opinion, she must fill any gap with another medical opinion.  In other words, the ALJ may not "arbitrarily substitute [her] own judgment for [that] competent medical opinion."  *See Balsamo*, 142 F.3d at 81.

## <u>CONCLUSION</u>

For the reasons stated above, the ALJ erred and the Court therefore remands the matter to the Commissioner for reconsideration of Dr. Liu's opinion.[6]  The Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Kimberly's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

---

[6] The Court "will not reach the remaining issues raised by [Kimberly] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

SO ORDERED.

Dated:       November 25, 2020
             Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE